| | |
|---|---|
| Jesse Hooks, | Court File No. 2:24-CV-00209-PP |
| Plaintiff, | |
| | **DEFENDANTS LIFTED LIQUIDS, INC.,** |
| vs. | **URB CANNABIS, BARRY** |
| | **HOLLINGSWORTH, GERARD M.** |
| Lifted Liquids, Inc. d/b/a Lifted Liquids, | **JACOBS, AND NICHOLAS S.** |
| URB Cannabis, Barry Hollingsworth, Gerard | **WARRENDER'S MEMORANDUM OF** |
| M. Jacobs, Nicholas S. Warrender, Vando | **LAW IN SUPPORT OF THEIR MOTION** |
| Hold Ltd, MC Nutraceuticals, and John Does | **TO DISMISS** |
| 1–100, | |
| Defendants. | |

## INTRODUCTION

Defendants Lifted Liquids, Inc. d/b/a Lifted Liquids ("Lifted"), URB Cannabis, Barry Hollingsworth, Gerard M. Jacobs, and Nicholas S. Warrender (collectively, the "Lifted Defendants")[1] submit this memorandum of law in support of their Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff Jesse Hooks's ("Plaintiff") Amended Complaint begins by announcing that his allegations are pleaded entirely "upon information and belief, except for the allegations pertaining specifically to Plaintiff." (Doc. 3 ("Am. Compl.") at 1.) It then claims Plaintiff is the victim of a vast conspiracy, one in which the Lifted Defendants manufactured hemp products allegedly containing unlawfully high tetrahydrocannabinol ("THC") content. In furtherance of this supposed conspiracy, Plaintiff alleges that in collusion with other defendants—most of whom are unknown

---

[1] "URB Cannabis" is not a separate company. Instead, Lifted sells products using the "URB" brand name. Barry Hollingsworth ("Hollingsworth"), Gerard M. Jacobs ("Jacobs"), and Nicholas S. Warrender ("Warrender") are corporate officers of Lifted.

John Does—the Lifted Defendants deliberately mischaracterized their products as legal for consumption. Plaintiff claims that because he purchased the Lifted Defendants' purportedly illegal products, law enforcement raided his business, he was charged with and convicted of drug-related crimes, and his business was closed.

The real cause of Plaintiff's damages, however, is attributable solely to his own independent criminal behavior, which included operating a hemp business without a license and repackaging marijuana products with alternative labeling to falsely represent that certain products were legal for purchase.

Furthermore, each of Plaintiff's claims—whether pleaded under state law or under the federal RICO statutes—fails to state a claim upon which relief can be granted and should accordingly be dismissed.

## FACTUAL BACKGROUND

### I. ALLEGATIONS AS PLEADED.

Plaintiff is an Arkansas resident who owned a retail establishment that sold hemp and glass products. (*Id.* ¶¶ 5, 8.) Plaintiff claims he purchased Delta-8 THC ("Delta-8") vape pens and concentrates (the "Products") manufactured by Lifted and distributed by Vando Hold LTD ("Vando"). (*Id.* at 1, ¶ 9.) The Products at issue are: (1) "Urb Cannabis, vape, with a strain name of Cupcake Cush"; (2) "Urb Cannabis, vape, with a strain name of Zenergy Uplift"; (3) "Urb Cannabis, vape, with a strain name of Crumble"; and (4) "Urb Cannabis, gummies, with a strain name of Lemon Gummies." (*Id.* ¶ 49.)

Plaintiff alleges that he purchased the Products "in reliance upon the lab reports issued by the Lab Defendants and published by Lifted Made to induce Plaintiff to purchase the Products," that "[t]hese products were falsely certified as compliant by the Lab Defendants," and that "the

products were not compliant."[2] (*Id.* ¶ 9.) Essentially, Plaintiff claims that he thought he was purchasing Delta-8 Products, but those Products contained more than 0.3 percent of Delta-9 THC ("Delta-9") on a dry-weight basis. (*Id.* ¶ 20.) Plaintiff claims that because the Products were labeled as Delta-8 but contained more than 0.3 percent of Delta-9, the Products are considered an illegal controlled substance under federal law.[3] (*Id.* ¶¶ 17–21.)

The Amended Complaint explains that local law enforcement raided Plaintiff's store, he was arrested, charged with multiple crimes, and was eventually convicted of Possession of a Controlled Substance. (*Id.* ¶¶ 10–11, 13.) Plaintiff's inventory was seized, and his business was closed. (*Id.* ¶ 12.)

Although the Amended Complaint provides a partial summary of the criminal proceeding that forms the basis of Plaintiff's claims, public records of the criminal proceeding entitled *State of Arkansas v. Jesse Thomas Hooks* contain information that is dispositive of Plaintiff's case.[4] (Scott Decl., Ex. 1 (Criminal Information).) On February 23, 2022, the Camden (Arkansas) Police Department executed a search warrant at Plaintiff's business, the "Star Fire Smoke Shop." (*Id.*, Ex. 2 at 3 (Probable Cause Aff.).) The Probable Cause Affidavit—submitted by Captain John Voss—addresses the fact that Plaintiff's store was unlawfully operating without a hemp license:

---

[2]     The "Lab Defendants" are identified as John Does 1–10 (Am. Compl. ¶ 7.)
[3]     Plaintiff alleges that about two years after the raid by law enforcement, his counsel had "all of the Products" tested on November 3, 2023, and that those products exceeded 0.3% Delta-9. (Am. Compl. ¶¶ 49, 131.)
[4]     It is well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss, and taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment. *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022). A state criminal case that renders allegations implausible is material at the motion to dismiss stage. *Cox v. Med. Coll. of Wisconsin Inc.*, 651 F. Supp. 3d 965, 995 (E.D. Wis. 2023); *see also El-Bey v. Vill. of S. Holland*, 513 F. App'x 603, 604–05 (7th Cir. 2013) ("In considering a motion to dismiss for failure to state a claim, a district court may consider any facts set forth in the complaint that undermine the plaintiff's claim.").

> I was speaking with the Arkansas Department of Agriculture (ADA). The (ADA) explained any person in possession of Hemp material (Cannabis type plant) needs a license from the (ADA), and if the store does not have the license the store's owner is in violation of State Law A.C.A. 2-15-514 the AR Hemp Protection Act of 2021. . . . there is not a valid Hemp license in Ouachita County / City of Camden, and the store owners are in violation of A.C.A. 2-15-514 by possessing this plant material.

(*Id*. at 1–2.) The Probable Cause Affidavit further recounts that prior to the raid, a detective purchased products at Plaintiff's store. (*Id*. at 2.) On February 17, 2022, the ADA provided testing results to the Camden Police Department stating that two products—"Sour Tangle" and "Pink Rozlay"—contained an illegal level of THC. (*Id*. at 3.) The Amended Complaint does not reference the products "Sour Tangle" or "Pink Rozlay" and does not make any allegation that any defendant in this case manufactured or sold them. (*See generally*, Am. Compl.) The Probable Cause Affidavit contains no reference to any of the Products at issue in this case. (*Compare id*. ¶¶ 14, 49, *with* Scott Decl., Ex. 2, *and id*., Ex. 6, Arkansas State Crime Lab.)

The Probable Cause Affidavit further notes that "it appears Star Fire Smoke Shop is selling a controlled substance (Marijuana) by purchasing Marijuana items claiming to be in compliance with state law. The Shop is repackaging the items with [their own] labels claiming pure legal hemp." (Scott Decl., Ex. 2 at 3.)

Other records from the underlying criminal case show that Plaintiff was charged with Maintaining a Drug Premises in violation of Ark. Code § 6-64-402, Possession of a Schedule VI Controlled Substance (Marijuana) with Purpose to Deliver in violation of Ark. Code. § 5-64-436, Possession of Drug Paraphernalia in violation of Ark. Code § 5-64-443, and Proximity to Certain Facilities in violation of Ark. Code § 5-64-411. (*Id*., Ex. 1.) Plaintiff eventually pleaded guilty to one of three drug-related charges. (*Id*., Ex. 3, Plea Agreement; *id*., Ex. 4, Plea of Guilty Statement; *id*., Ex. 5, Sentencing Order.)

<u>**ARGUMENT AND AUTHORITIES**</u>

**I.      FED. R. CIV. P. 12(b)(6) AND PLEADING STANDARDS.**

A Rule 12(b)(6) motion tests whether the complaint states a claim on which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bauer v. Armslist, LLC*, 572 F. Supp. 3d 641, 656 (E.D. Wis. 2021) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Fundamentally, "the plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016) (quotations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In deferring to the well-pleaded factual allegations, the reviewing court "need not accept as true statements of law or unsupported conclusory factual allegations." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021); *see also Jones v. Int'l Ass'n of Bridge Structural Ornamental & Reinforcing Iron Workers*, 864 F. Supp. 2d 760, 765–66 (E.D. Wis. 2012) (stating that courts must construe the complaint by accepting as true all well-pleaded facts as alleged, but courts are "not bound to accept as true a legal conclusion couched as a factual allegation"). If a plaintiff has not pleaded facts entitling him to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558–59 (citations omitted).

When a party alleges fraud or mistake, Rule 9(b)'s heightened pleading standard requires the party to "state with particularity the circumstances constituting fraud or mistake." *See* Fed. R.

Civ. P. 9(b). The particularity requirement of Rule 9(b) is designed to discourage a "sue first, ask questions later" philosophy. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). Adding flesh to the bones of "particularity," courts have often incanted that a plaintiff ordinarily must describe the "who, what, when, where, and how" of the fraud—i.e., "the first paragraph of any newspaper story." *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009). "A plaintiff who alleges fraud can provide all the detail in the world, but does not have unlimited leeway to do so on 'information and belief.'" *Walgreen*, 631 F.3d at 442. Generally, a plaintiff "cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief." *Id*.

## II. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS BECAUSE THEY ARE FACIALLY IMPLAUSIBLE AND LACK A SCINTILLA OF CAUSATION.

The Lifted Defendants did not cause the loss of Plaintiff's store or the damages he seeks. The raid on Plaintiff's store was authorized after law enforcement submitted a Probable Cause Affidavit. (Scott Decl., Ex. 2 at 3.) The Probable Cause Affidavit provides that under Arkansas law any store selling hemp material is required to have a license issued by the Arkansas Department of Agriculture; Plaintiff had no such license. (*Id*.) The Probable Cause Affidavit further states that the investigation determined the "Star Fire Smoke Shop is selling a controlled substance (Marijuana) by purchasing Marijuana items claiming to be in compliance with state law. The Shop is repackaging the items with [their own] labels claiming pure legal hemp." (*Id*.)

Plaintiff's failure to obtain the necessary license is completely unrelated to the Lifted Defendants. The Lifted Defendants did not cause Plaintiff to illegally repackage products. They similarly did not cause Plaintiff to engage in conduct that led to the criminal charges filed against him as reflected in the Criminal Information, including possessing "at least two other controlled substances" in addition to marijuana, "a firearm that was in the immediate physical control of the

person at the time of the possession of the substance," and "Possession of Drug Paraphernalia." (*Id.*, Ex. 1.)

Furthermore, a laboratory analysis performed by the Arkansas State Crime Laboratory in Plaintiff's criminal case confirms that Plaintiff's legal violations occurred independent of any actions by the Lifted Defendants. The laboratory found that four products—a "green vegetable matter," a "smoking device containing clear oil," an "orange, rock-like candy," and "orange potato chips"—were positive for Delta-9. (*Id.*, Ex. 6.) Three of those products—the "green vegetable matter," an "orange, rock-like candy," and "orange potato chips"—are obviously not the "Products" addressed in the Amended Complaint, all of which are vape products. (Am. Compl. ¶ 49.) Plaintiff alleges no facts allegedly linking the remaining product—the "smoking device containing clear oil"—to the Lifted Defendants. (*Compare id., with* Scott Decl., Ex. 6.)

Simply put, Plaintiff cannot seek damages by pointing fingers at the Lifted Defendants. His legal woes were solely caused by his own illegal activities and his sale of products that have nothing to do with the Lifted Defendants or the Products that are the subject of the Amended Complaint.

## III.   PLAINTIFF'S FRAUDULENT REPRESENTATIONS CLAIM UNDER WIS. STAT. § 100.18 (COUNT I) FAILS RULE 9(b)'s PARTICULARITY STANDARD.

Plaintiff's fraudulent representation claim—brought pursuant to Wis. Stat. § 100.18 of the Wisconsin Deceptive Trade Practices Act ("WDTPA")—fails because Plaintiff offers only vague and speculative allegations, which are not enough to state a claim upon which relief can be granted. *See, e.g., Cota v. Ralph Lauren Corp.*, 603 F. Supp. 3d 666, 672 (E.D. Wis. 2022) (granting motion to dismiss based on speculation and mere possibility of misconduct). The elements of a false advertising claim under the WDTPA are: (1) the defendant made a representation to the public with intent to induce an obligation; (2) the representation was untrue, deceptive, or misleading;

and (3) the representation caused the plaintiff a pecuniary loss. *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, ¶ 19, 301 Wis. 2d 109, 122, 732 N.W.2d 792, 798. "The WDTPA does not purport to impose a duty to disclose, but, rather, prohibits only affirmative assertions, representations, or statements of fact that are false, deceptive, or misleading." *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 40, 270 Wis. 2d 146, 170, 677 N.W.2d 233, 245. "To comply with Rule 9(b) plaintiff must at least identify the statements alleged to be false or deceptive, not a general legal conclusion that such statements were made." *Ball v. Sony Elecs. Inc.*, 2005 WL 2406145, at *4 (W.D. Wis. Sept. 28, 2005) (granting motion to dismiss on WDTPA claim).

Plaintiff identifies two alleged misrepresentations. First, he claims the Lifted Defendants make "false representations" because a website for Lifted Products contains the following language:



(Am. Compl. ¶ 37.)[5] The language above plainly states that URB products are tested for various things, but does not say that the Lifted Defendants warrant the products have any particular qualities (*Id.*) Further, Plaintiff fails to allege that he relied on the language above, that such

---

[5]      https://urb.shop/lab-results/ (last visited July 18, 2024).

language was a material inducement of his purchase, or that the language above is false or deceptive. *Ball*, 2005 WL 2406145, at *3–4 (granting motion to dismiss where the plaintiff failed to adequately allege either an affirmative misrepresentation or reliance as required to state a claim for relief under § 100.18). Instead, Plaintiff claims to have affirmatively relied on unspecified certificates of analysis ("COAs") placed upon the Lifted Defendants' products, but Plaintiff fails to identify any specific language within the COAs that was purportedly false or otherwise misleading. (Am. Compl. ¶ 34.)

Second, Plaintiff claims the Lifted Defendants falsely represented the Products as containing less than 0.3% Delta-9. (*Id*. ¶¶ 38, 40.) Although he claims to have performed an independent test of some unknown products, ***Plaintiff fails to plead that the products he tested were the same products that were confiscated when Plaintiff's store was raided***—i.e., the foundation for his pecuniary loss claim—and he fails to include the test results with his pleading. These allegations are simply not enough to raise a right to relief above a speculative level. (*Id*. ¶¶ 30, 131); *see also Cota*, 603 F. Supp. 3d at 671–72 (dismissing WDTPA claims as speculative because the plaintiff did not identify the product she purchased, the specific representation defendant made with respect to that product, and failed to assert that the product was tested and conflicted with a specific representation made by the defendant).

Furthermore, even if Plaintiff had pleaded that the products purportedly tested by his counsel were the ones confiscated by law enforcement, Plaintiff still cannot plausibly plead causation. His losses, if any, are attributable solely to his decision to operate a business without a required license and falsely claim that certain products were compliant with Arkansas law. (Scott Decl., Ex. 2 at 1–3; *see also id*., Ex. 6.) Because the Lifted Defendants cannot plausibly be the cause of Plaintiff's legal troubles, they should be dismissed from this action. *Cf. Kuebler v. Vectren*

*Corp.*, 13 F.4th 631, 647 (7th Cir. 2021) (granting motion to dismiss where the plaintiff failed to plausibly plead causation).

## IV. PLAINTIFF'S CLAIMS FOR BREACH OF EXPRESS WARRANTY AND IMPLIED WARRANTY OF MERCHANTABILITY (COUNT II) FAIL BECAUSE THERE IS NO CONTRACTUAL PRIVITY AND PLAINTIFF DID NOT ADEQUATELY PLEAD PRE-SUIT NOTICE.

### A. No Contractual Privity.

The Amended Complaint contains no mention of a contract between Plaintiff and the Lifted Defendants, nor could it, because no such contract exists. This is fatal to the breach of express and implied warranty claims. In Wisconsin, "warranty actions are treated as falling within the law of contract rather than the law of tort." *Grain Exch. Condo. Ass'n, Inc. v. Burke*, 2012 WI App 62, ¶ 29, 341 Wis. 2d 489, 815 N.W.2d 406. "Wisconsin law requires privity of contract between the parties before liability can be founded on breach of express or implied warranty." *Twin Disc, Inc. v. Big Bud Tractor*, 582 F.Supp. 208, 215 (E.D. Wis. 1984); *Est. of Kriefall v. Sizzler USA Franchise, Inc.*, 2011 WI App 101, ¶ 72, 335 Wis. 2d 151, 222, 801 N.W.2d 781, 816, aff'd, 2012 WI 70, ¶ 72, 342 Wis. 2d 29, 816 N.W.2d 853 ("Wisconsin has always required privity of contract in an action for a breach of implied warranty."); *Lamont v. Winnebago Indus., Inc.*, 569 F. Supp. 2d 806, 816 (E.D. Wis. 2008) ("[P]rivity of contract must exist between a buyer and seller in order to create an implied warranty.").

Here, Plaintiff alleges that he bought Lifted products from Vando. (Am. Compl ¶ 9.) He fails to allege any contractual privity between himself and the Lifted Defendants. Absent the existence of a contract, there can be no breach of express or implied warranty claims.

### B. Failure to Adequately Plead Pre-Suit Notice.

Plaintiff alleges that "[e]ach Defendant has previously received notice and has been aware of these issues prior to the filing of this Amended Complaint," but such meager allegations are not

enough to satisfy Plaintiff's burden. (*Id.* ¶ 77); *see, e.g., Castle v. Kroger Co.*, 634 F. Supp. 3d 539, 563–64 (E.D. Wis. 2022) (granting motion to dismiss for lack of pre-suit notice when the plaintiff merely alleged she "provided or will provide notice to defendant, its agents, representatives, retailers, and their employees"); *see also Brame v. Gen. Motors LLC*, 535 F. Supp. 3d 832, 839–41 (E.D. Wis. 2021) (stating that under Wisconsin law, service of a summons and complaint cannot function as notice, and the filing of a prior lawsuit cannot be considered pre-suit notice). Most notably, Plaintiff has failed to adequately allege that he provided pre-suit notice to Vando, the company from which he actually purchased the Products at issue. Because Plaintiff failed to adequately plead or comply with Wis. Stat. § 402.607(5)(a), he is "barred from any remedy" and the breach of implied and express warranty claims must be dismissed.

## V. PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM (COUNT III) FAILS BECAUSE IT DOES NOT IDENTIFY ANY ACTIONABLE STATEMENTS MADE TO PLAINTIFF BY THE LIFTED DEFENDANTS.

Plaintiff fails to allege any particular facts regarding the Products, the specific representation made, or how the alleged representation compares to the actual Products.[6] *Cota*,

---

[6]    Plaintiff appears to have parroted heavily from the *Cota* decision when creating the Amended Complaint, but unfortunately for Plaintiff, he parroted language that the court in *Cota* found to be deficient and grounds for dismissal. (*Compare* Am. Compl. ¶¶ 81–84 ("Defendant(s) undertook a duty to represent the Product truthfully, and Defendant breached this duty by understating the amount of D9 THC in the product and contains [sic] less than the amount of D8 THC advertised"; "This duty is based on each Defendant's position, holding itself out as having special knowledge and experience in this area as a manufacturer, distributor, tester, or retailer"; "Each Defendant's representations took advantage of consumers' cognitive shortcuts made at the point of sale and their trust in each Defendant and their products"; "Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce, and did induce, his purchase of the Products")*, with Cota*, 603 F. Supp. 3d at 674 ("She asserts that RLC 'had a duty to truthfully represent the Product, which it breached,' and that the representations 'took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in [RLC], a nationally recognized and trusted brand.' She alleges that she and the putative class members 'reasonably and justifiably relied on' the representations, such that they were induced to purchase the product. . . . this claim also suffers from Cota's failure to allege any particular facts

603 F. Supp. 3d at 674; *see also Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by & through Lyon v. Buth*, 475 F. Supp. 3d 910, 938 (E.D. Wis. 2020) (dismissing claim for failure to identify actionable statements). In sum, the allegations do not infer "more than the mere possibility of misconduct." *Cota*, 603 F. Supp. 3d at 674 (quoting *Iqbal*, 556 U.S. at 678).

The elements of negligent misrepresentation are: (1) the defendant made a representation of fact; (2) the representation was untrue; (3) the defendant was negligent in making the representation; and (4) the plaintiff believed that the representation was true and relied on it. *Malzewski v. Rapkin*, 2006 WI App 183, ¶ 20, 296 Wis. 2d 98, 113, 723 N.W.2d 156, 163. "[U]nder a negligent misrepresentation theory, a plaintiff must show the defendant owed a duty of care to the plaintiff and failed to exercise ordinary care in making the misrepresentation or in ascertaining the facts. *Van Den Heuvel v. AI Credit Corp.*, 951 F. Supp. 2d 1064, 1074 (E.D. Wis. 2013). "Generally, there is no duty to disclose all facts known to a party in an arm's-length transaction." *Id*. A duty to disclose a fact may arise where:

> (1) the fact is material to the transaction; (2) the party with knowledge of that fact knows that the other party is about to enter into the transaction under a mistake as to the fact; (3) the fact is peculiarly and exclusively within the knowledge of one party, and the mistaken party could not reasonably be expected to discover it; and (4) on account of the objective circumstances, the mistaken party would reasonably expect disclosure of the fact.

*Id*.

Here, Plaintiff fails to identify any specific statements or omissions attributable to the Lifted Defendants. Again, Plaintiff fails to plead that the Products at issue—the ones his attorneys supposedly tested and which form the basis of the claims—were the same products that were

---

regarding the product, the specific representation made, or how the alleged representation compares to the actual product." (internal citations omitted)").)

confiscated when Plaintiff's store was raided. (Am. Compl. ¶¶ 8–14, 49, 80–86.) Because Plaintiff's allegations are rooted in innuendo instead of specific facts, identifiable representations, or links between a representation and the actual products that he sold at the Star Fire Smoke Shop, the negligent misrepresentation claim must be dismissed.

## VI. PLAINTIFF FAILS TO PLEAD HIS FRAUD CLAIM (COUNT IV) IN ACCORDANCE WITH RULE 9(b)'s PARTICULARITY STANDARD.

Plaintiff fails to plead fraud with particularity. To establish a claim for fraud, Plaintiff must demonstrate (1) a false representation; (2) an intent to defraud; (3) reliance upon the false representation; and (4) damages. *Cota*, 603 F. Supp. 3d at 674. He must also "state with particularity the circumstances constituting fraud or mistake" in accordance with Rule 9(b). *See* Fed. R. Civ. P. 9(b). A plaintiff claiming fraud "must do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate," and as such, a complaint alleging fraud must provide "the who, what, when, where, and how." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal quotation marks and citations omitted).

Again, Plaintiff fails to fortify the foundational foothold of his entire case by omitting factual allegations connecting the Products supposedly at issue to the products that were seized when Plaintiff's store was raided by authorities; the evidence unearthed from Plaintiff's criminal matter does him no favors in this regard. (*Compare* Am. Compl. ¶¶ 8–14, 49, 80–86*, with* Scott Decl., Ex. 1–6.) Instead, Plaintiff attempts to ground his fraud claim "on information and belief," which is insufficient to state a claim. (Am. Compl. at 1); *see, e.g., Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992) (affirming dismissal of the underlying fraud allegations of a RICO claim reasoning that allegations made upon information and belief are insufficient, even if the facts are inaccessible to the plaintiff, unless the plaintiff states the grounds for his suspicions,

which was something the plaintiff failed to do). These vague and speculative allegations are not enough to satisfy Rule 9(b), and accordingly, should result in dismissal. *Cota*, 603 F. Supp. 3d at 675; *see also Infotronx*, 974 F.2d at 924 ("Rule 9(b) ensures that a plaintiff have some basis for his accusations of fraud before making those accusations and thus discourages people from including such accusations in complaints simply to gain leverage for settlement or for other ulterior purposes.").

## VII. PLAINTIFF'S UNJUST ENRICHMENT/DISGORGEMENT CLAIM (COUNT V) FAILS BECAUSE HE ALLEGES RECEIVING A PRODUCT FOR A PRICE.

Plaintiff's unjust enrichment claim fails because he allegedly purchased, received, and retained Products manufactured by the Lifted Defendants, and his request for "disgorgement" is not a recognized cause of action, but rather, is an equitable remedy to prevent unjust enrichment. *Cf. Mydlach v. Kiser*, 2003 WI App 244, 268 Wis. 2d 295, 671 N.W.2d 865.

Under Wisconsin law, unjust enrichment is an equitable doctrine "grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust." *Watts v. Watts*, 137 Wis. 2d 506, 530, 405 N.W.2d 303 (1987). An unjust enrichment claim requires: "(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of the fact of such benefit, and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof." *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477 (7th Cir. 2009). Unjust enrichment involves getting something for nothing, not providing a product for a price. *Cota*, 603 F. Supp. 3d at 675 (citing *T&M Farms v. CNH Indus. Am., LLC*, 488 F. Supp. 3d 756, 769 (E.D. Wis. 2020)).

Here, Plaintiff alleges that he received Products for a price. (Am. Compl. ¶¶ 9, 14.) Although he may not have been satisfied with the Products, mere disappointment is not enough to

state a claim for unjust enrichment claim. *Cota*, 603 F. Supp. 3d at 675. The Court should dismiss these claims accordingly.

## VIII. PLAINTIFF'S ATTEMPT TO STATE A RICO CLAIM UNDER 18 U.S.C. § 1962(c) (COUNT VI) FAILS AS A MATTER OF LAW.[7]

Plaintiff's Racketeer Influence and Corrupt Organizations Act ("RICO") claim is nonsensical, fails to plead the essential elements of the claim, and should be dismissed. Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

*See* 18 U.S.C. § 1962(c). In order to state a viable cause of action under Section 1962(c), a plaintiff must allege: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).

### A. The Parties Involved in The Supposed RICO Enterprise.

To understand the sprawling conspiracy Plaintiff envisions, it is helpful to recall the identities of the parties. The *named* defendants consist of: (1) the Lifted Defendants (comprised of Lifted—a business that sells hemp products—and three officers of Lifted against whom nothing specific is alleged); (2) MC Nutraceuticals, which is a supplier of hemp-derived distillate; and (3) Vando, which is a retailer. In addition to the named defendants, Plaintiff also named 100 "John Doe" defendants, which consist of the following:

- John Does 1–10 are unidentified "Lab Defendants" who contracted to test the products Plaintiff allegedly purchased. (Am. Compl. ¶ 7.)

- "John Doe 11 is its ISO." (*Id*. ¶ 6.) It is unclear what this allegation means.

---

[7] Plaintiff titled his RICO-based claim as Counts I and II despite them being the sixth and seventh counts alleged. (Am. Compl. ¶¶ 99–155.)

- John Does 12–30 are unidentified "Distillate Defendants" who "provided Lifted with distillate, and other ingredients to manufacture the Products Plaintiff purchased." (*Id*. ¶ 7.)

- John Does 31–40 are unidentified "individuals who have provided credit or financing to [Lifted] or have provided [Lifted] with distillate." (*Id*. ¶ 6.)

The Amended Complaint provides no description of who or what is being sued as John Does 31–100.

## B.  The Purported RICO Enterprise.

Plaintiff's attempt at pleading the existence of a RICO enterprise is deficient as a matter of law. "A RICO complaint must identify the enterprise." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995). "A RICO enterprise is 'an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Id.* at 644 (quoting *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990)).

Plaintiff repeatedly alleges the existence of an enterprise that is synonymous with the pattern of racketeering activity itself. (Am. Compl. ¶ 136 ("Defendants test, manufacture, and sell the illegal D8 vape pens and concentrates (marijuana) and therefore formed and association-in-fact enterprise"); *see also id*. ¶¶ 101, 111 (describing supposed "racketeering activity" and then stating, "[t]his is the RICO enterprise").) These allegations are plainly deficient as a matter of law. *United States v. Turkette*, 452 U.S. 576, 583 (1981) ("The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved.").

Plaintiff elsewhere offers a different formulation of the supposed enterprise, this time consisting entirely of unidentified "John Doe" parties: "The John Doe Manufacturer and Lab Defendants together formed an open-ended association-in-fact enterprise for the purpose of selling illegal D8 vape pens and concentrates (marijuana) across the United States and selling it to retailers across the nation for purchase by Plaintiff." (Am. Compl. ¶ 125.) This construction of the enterprise also fails. "A RICO enterprise can only exist if it has an ongoing structure of people associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Richmond*, 52 F.3d at 644. Here, Plaintiff fails even to *identify* any members of the supposed enterprise and entirely fails to describe any supposed ongoing structure and organization. And even Plaintiff's meager, conclusory allegations are pleaded entirely "upon information and belief." (Am. Compl. at 1.)

Elsewhere in the Amended Complaint, Plaintiff makes yet another typographical error-filled attempt at identifying a RICO enterprise:

> Together with their respective John Does and members, each corporate entity, like Lifted Made Defendants, and other named Defendants manufactures D8 vape pens or concentrates with distillate from entities like **John Does 1-10**, then sells marijuana is an enterprise because there is no dispute that each corporation is a "legal entity" and thus may constitute a RICO "enterprise."

(Am. Compl. ¶ 135 (emphasis in original).) This paragraph is simply incoherent. Not only does it fail to provide the requisite description of an enterprise having ongoing structure and organization, but it also fails to identify who or what the enterprise or enterprises involve. Plaintiff seems to indicate that every corporate defendant—whether named or one of the 100 John Does—can individually constitute a RICO enterprise, but in the same breath gathers those entities "[t]ogether with their respective John Does and members" while failing to indicate who are the "members." This allegation is nonsensical.

Pleading the existence of a valid RICO enterprise is a threshold requirement to survive a motion to dismiss. Because Plaintiff has failed to do so, the RICO claim must be dismissed.

### C. Conduct Alleged.

A second element required for pleading a Section 1962(c) claim is establishing that the person or business "associated with the enterprise conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Richmond*, 52 F.2d at 646 (internal quotations omitted). "In order to have conducted or participated in the enterprise's affairs under § 1962(c), the person charged must have had some part in directing those affairs." *Slaney*, 244 F.3d at 598 (citing *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). "In other words, she must have asserted some control over the enterprise." *United States v. Swan*, 224 F.3d 632, 635 (7th Cir. 2000).

Plaintiff's failure to identify the parties in the supposed RICO enterprise make it functionally impossible to plead ways in which the defendants have supposedly directed the affairs of the enterprise. And Plaintiff makes no attempt to do so. The broad labels applied to the dozens of "John Doe" defendants comprising the supposed enterprise additionally illustrate just how implausible to the point of absurdity Plaintiff's allegations are. For example, how has Vando—a retailer—directed the affairs of John Does 31–40, consisting of "people who have provided credit or other financing to" Lifted? (Am. Compl. ¶ 6.) How has a distillate supplier like MC Nutraceuticals "conducted" the operations of other distillate suppliers (John Does 12–30)—i.e., its competitors in the industry? (*Id*. ¶ 7.) Plaintiff has not and cannot plead facts sufficient to establish that any defendant conducted the operations of a RICO enterprise. And even the paltry conclusions Plaintiff presents as a substitute for sufficient pleading are alleged entirely "upon information and belief." (Am. Compl. at 1.)

### D. Plaintiff's RICO Claim Should be Dismissed Without Leave to Replead.

Plaintiff's failure to plead a meritorious RICO claim is substantive and cannot be solved by repleading. Plaintiff possesses nothing more than a conspiracy theory that a vast number of people and businesses are engaged in an illegal plot together. Plaintiff does not even claim to know who the supposed participants in this conspiracy are, even now in his second attempt at pleading. His mere "labels and conclusions" are not enough. *Twombly*, 550 U.S. at 1959.

Accordingly, no leave to make a third attempt at repleading should be permitted. Where an attempt at repleading would be futile (because it would not survive a motion to dismiss) denying requests to replead is appropriate. *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 970 (7th Cir. 1992). "To hold otherwise would impose upon the defendants and the court the arduous task of responding to an obviously future gesture on the part of the plaintiffs." *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991).

## IX. PLAINTIFF'S RICO CLAIM UNDER 18 U.S.C. § 1962(d) (COUNT VII) FAILS.

In addition to his claim under Section 1962(c), Plaintiff asserts a claim for conspiracy to violate RICO under 18 U.S.C. § 1962(d). "[W]here plaintiff has failed to sufficiently allege a plausible claim to relief under § 1962(c), such a deficiency infects plaintiff's §1962(d) claim as well." *Edgnet, Inc. v. GS1 AISBL*, 742 F. Supp. 2d 997, 1021 (E.D. Wis. 2010). This claim requires little analysis. For the same reasons that his Section 1962(c) claim fails, the Section 1962(d) claim should also be dismissed with prejudice and without leave to replead.

## X. THE COURT SHOULD DISMISS ALL CLAIMS AGAINST HOLLINGSWORTH, JACOBS, AND WARRENDER BECAUSE NO FACTS ARE PLEADED AGAINST THEM.

In addition to Plaintiff's claims failing as a matter of law, the Amended Complaint identifies no factual basis supporting the existence of claims against the individual defendants.

Apart from being named in the case caption and once noting their positions as corporate officers, Plaintiff fails to plead any facts tying Hollingsworth, Jacobs, or Warrender to the alleged actions and conspiracies underlying the claims. Instead, throughout the Amended Complaint, Plaintiff relies upon general allegation of conduct by "Defendants" without specifying which named or John Doe defendant, business entities, or individuals have supposedly done what. *See, e.g., Riley v. Vilsack*, 665 F. Supp. 2d 994, 1002 (W.D. Wis. 2009) ("The Court made it clear in *Iqbal* that plaintiffs *do* need to plead facts; conclusions are not enough." (emphasis in original)); *see also* (Am. Compl. ¶ 6.) In the absence of specific factual allegations against these individuals, there are no claims upon which relief can be granted. Therefore, Hollingsworth, Jacobs, and Warrender should be dismissed from this case.

## CONCLUSION

For the foregoing reasons, the Lifted Defendants request that the Court dismiss Plaintiff's claims against them with prejudice and without leave to amend.

Dated: July 19, 2024

**FOX ROTHSCHILD LLP**

By: */s/ Aaron Mills Scott*
    Aaron Mills Scott, ID No. 1121109
    Michael T. Burke, ID No. 1116925

33 South Sixth Street, Suite 3600
Minneapolis, Minnesota 55402
Telephone: (612) 607-7000
Facsimile: (612) 607-7100
ascott@foxrothschild.com
mtburke@foxrothschild.com

**ATTORNEYS FOR LIFTED LIQUIDS, INC. (INCORRECTLY NAMED AS LIFTED MADE D/B/A LIFTED LIQUIDS AND URB CANNABIS), BARRY HOLLINGSWORTH, GERARD**

**M. JACOBS, AND NICHOLAS S. WARRENDER**